**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CR-0114-CVE** |
| | ) | |
| **AGUSTIN NIETO REGALADO,** | ) | |
| **A/K/A "MARCOS DIAZ",** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is plaintiff's notice of intent to offer evidence pursuant to Federal Rules of Evidence 414 and 404(b) (Dkt. # 18). Plaintiff seeks to introduce evidence under Federal Rule of Evidence 414 of three alleged prior acts of child molestation in order to prove defendant's propensity to commit the offense of attempted enticement of a child. Plaintiff also seeks to introduce evidence, under Federal Rule of Evidence 404(b), as to those as well as two other minors. Defendant has filed a response (Dkt. # 21). The Court held an evidentiary hearing on November 4, 2019. Prior to the evidentiary hearing, defendant filed two motions in limine (Dkt. ## 24, 25). The first motion in limine (Dkt. # 24) will be set for hearing, and the Court will rule following the hearing. The second motion in limine (Dkt. # 25) will be addressed herein.

### I.

On June 6, 2019, a grand jury returned an indictment (Dkt. # 2) charging defendant with one count of attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b) (count one), and one count of possession of a false lawful permanent resident card, in violation of 18 U.S.C. §1546(a) (count two). As to count one, it is a criminal offense to use a

means or facility of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice, or coerce any individual less than eighteen years of age to engage in sexual activity for which any person can be charged with a crime. 18 U.S.C. § 2422(b). The Tenth Circuit has stated that the government must prove the following four elements to sustain a conviction under this statute: "(1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) any individual who is younger than 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense, or attempting to do so." United States v. Faust, 795 F.3d 1243, 1248 (10th Cir. 2015).

The allegations upon which count one of the indictment is based are as follows: On April 28, 2019, eleven-year-old D.F.'s mother, Dunia F., discovered Facebook messages of a sexual nature between D.F. and defendant. Dkt. # 18, at 2. Defendant had previously resided in "Rocio's house," where D.F. had stayed.[1] Id. at 3. Dunia then took over D.F.'s Facebook account and began responding to defendant's messages, pretending to be D.F. Id. During the conversation, defendant sent nude photographs of himself, requested sexually explicit photographs, discussed previous touching, and proposed sexual intercourse in exchange for $200. Id. Defendant also made a Facebook call to D.F., during which Dunia overheard defendant mention prior sexual contact with D.F., offer to marry D.F. when she turned eighteen, offer money in exchange for sexual intercourse, and made D.F. swear not to tell anyone so that he would not go to jail. Id. On April 29, 2019, Dunia informed the Tulsa Police Department (TPD) of defendant's actions. Id. The TPD Cyber Crimes Unit subsequently took over D.F.'s Facebook account in an undercover capacity. Id. The officers

---

[1] Plaintiff stated at the evidentiary hearing that defendant rented a room from Rocio. The minors had stayed with Rocio, who was a friend of Dunia, while defendant was residing with her.

received a video of defendant masturbating and received repeated solicitations of D.F. to engage in sexual intercourse for money. Id. The undercover officers told defendant that they (meaning D.F.) would leave school and meet him at a local QuikTrip on the afternoon of May 1, 2019. Id. Defendant was subsequently arrested while attempting to meet D.F. at the QuickTrip. Id. After being read his Miranda rights, defendant explained that he believed it was D.F.'s mother with whom he was communicating, rather than D.F. Id.

The prior uncharged acts of child molestation that plaintiff seeks to introduce at trial are as follows: After defendant's arrest, D.F. took part in a forensic interview at the Child Advocacy Center. Id. D.F. reported two incidents of molestation by defendant that occurred when she was nine-years-old and temporarily residing with Rocio, from whom defendant rented a room. Id. In both instances, D.F. stated that defendant touched her breast area and genitals under her clothes, and then forced her to touch his penis. Id. at 3-4. Defendant gave D.F. ten dollars after the first incident and told her that if she told her mother what had happened, she would get into trouble and her mother would hit her. Id. at 4. D.F. described the second incident as occurring while she was watching a movie on the couch. Id. Finally, D.F. stated that she had heard that defendant had exposed himself to her cousins, M.S. and T.S. Id.

M.S. and T.S., the second and third minors, were staying at Rocio's house at the time of their alleged abuse. Id. During a forensic interview, seven-year-old M.S. informed the Child Advocacy Center that, while staying at Rocio's house two years prior to the interview, defendant would frequently touch her face while watching television in the house. Id. Defendant also allegedly touched M.S.'s genitals and buttocks over the clothes. Id. M.S. stated that she saw defendant touch her sister, T.S., in the same places and take her into the bathroom with him. Id. Five-year-old T.S.

was also forensically interviewed, but was unresponsive to questioning. Id. Yolanda S., the mother of M.S. and T.S., stated in an interview with the TPD that she walked in on defendant sitting next to T.S. with his hand next to her in an obscured location; when she arrived, defendant pulled his hand away. Id. Yolanda at another time walked to the first floor of Rocio's house and saw defendant with both T.S. and M.S., with his belt unbuckled, pulling up his pants. Id. at 4-5. When asked what he was doing, defendant informed Yolanda that he had been sleeping. Id. at 5.

Fourteen-year-old I.U.F.,[2] the fourth minor, was forensically interviewed on April 29, 2019. Id. I.U.F. was also staying with Rocio at the time of defendant's alleged conduct toward her. Id. I.U.F. described several solicitations and grooming attempts by defendant. Id. Defendant allegedly offered to give her a cellular telephone if she would go into the basement of the house with him for a kiss. Id. I.U.F. refused, but defendant continued to tell her on multiple occasions that she should have boyfriends his age because he would give her phones and money. Id.

Twelve-year-old C.C., the fifth minor, was forensically interviewed on May 3, 2019. Id. She was living in Rocio's house, in a separate room from defendant, at the time of defendant's alleged conduct toward her. Id. C.C. stated that on one occasion, defendant gave her five dollars and told her not to tell her father about the money. Id. Both C.C. and her father noticed that defendant would often stare at C.C., and her father would always accompany her when she went to the basement of the house where defendant lived. Id. C.C.'s father would stand guard outside of the bathroom when C.C. would shower. Id.

---

[2]      At the evidentiary hearing, plaintiff stated that the minor referred to as I.U. in its notice (Dkt. # 18) refers to I.U.F., who is the sister of D.F.

On November 4, 2019, the Court held an evidentiary hearing on the notice of intent, during which plaintiff introduced plaintiff exhibits 1-7(a). These include: police report excerpts, including witness statement summaries from minors and mothers (plaintiff exhibit 1); a translated, transcribed phone call among defendant, D.F., and Dunia (plaintiff exhibit 2); a translated Facebook conversation among D.F., Dunia, and an undercover officer (plaintiff exhibit 3); an interview of D.F. (plaintiff exhibit 4); an interview diagram from D.F. (plaintiff exhibit 4(a)); an interview of M.S. (plaintiff exhibit 5); a translation of the interview of M.S. (plaintiff exhibit 5(a)); an interview diagram from M.S. (plaintiff exhibit 5(b)); an interview of I.U.F. (plaintiff exhibit 6); a translation of the interview of I.U.F. (plaintiff exhibit 6(a)); an interview of C.C. (plaintiff exhibit 7); and a translation of the interview of C.C. (plaintiff exhibit 7(a)).

Plaintiff seeks to introduce under Rule 414 evidence of D.F.'s, M.S.'s, and T.S.'s alleged abuse in order to prove defendant's propensity to commit the offense of attempted enticement of a child and, alternatively, under Rule 404(b) to show motive, intent, plan, and absence of mistake. Dkt. # 18, at 1. Plaintiff argues that the acts as to D.F., M.S., and T.S. are intrinsic to the offense charged. Id. at 2. Plaintiff seeks to introduce evidence of all five minors' alleged abuse under Federal Rule of Evidence 404(b) to show motive, intent, plan, and absence of mistake. Id. at 1. Defendant argues that the evidence is not sufficiently similar to or relevant to the crime charged, and is unduly prejudicial. Dkt. # 21, at 9-10, 11-14.

## II.

### Rule 414

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." United States v. Benally, 500 F.3d 1085,

1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." "Courts are to 'liberally' admit evidence of prior uncharged sex offenses." Benally, 500 F.3d at 1090 (quoting United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997)).

The Tenth Circuit has instructed that "evidence of a prior sexual assault [or child molestation] must meet three threshold requirements before it may be considered for admission[:]"

> (1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant.

Benally, 500 F.3d at 1090; see also United States v. Mercer, 653 Fed. App'x. 622, 626 (10th Cir. 2016) (unpublished)[3] (applying these factors to child molestation). Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, even relevant evidence under Rule 414 "is subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice.'" Benally, 500 F.3d at 1090 (quoting Fed. R. Evid. 403).

> In applying the Rule 403 test to Rule 414 evidence, the district court should weigh '1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence' against '1) how likely [it is] such evidence will contribute to an improperly-based

---

[3] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

Mercer, 653 Fed. App'x. at 626 (quoting United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998)).  The district court must make a "clear record" of its findings as to the Rule 403 balancing test.  Id. at 1091 (internal quotation omitted).  In doing so, an evidentiary hearing is preferred.  See id. at 1088 (district court affirmed after holding an evidentiary hearing for uncharged offense).  Further, "[i]n applying the Enjady test, no single factor is dispositive."  Mercer, 653 Fed. App'x. at 626 (internal quotation marks omitted).

### **Rule 404(b)**

Rule 404(b) provides, in pertinent part:

Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

. . .

This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  In addition, the Tenth Circuit has "consistently held that evidence of 'modus operandi' or a common plan or scheme may be properly submitted under 404(b)."  United States v. LaFlora, 146 Fed. App'x. 973, 975 (10th Cir. 2005) (unpublished); see also United States v. Isabella, 918 F.3d 816, 840 (10th Cir. 2019).

Rule 404(b) does not apply to evidence that is admitted as proof of the charged conduct; it applies only to evidence of acts extrinsic to the charged crime.  United States v. Orr, 864 F.2d 1505, 1510 (10th Cir. 1988).  "'An uncharged act [is not] extrinsic if it was part of the scheme for which

a defendant is being prosecuted, or if it was 'inextricably intertwined' with the charged crime such that witness' testimony 'would have been confusing and incomplete without mention of the prior act.'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)).  In weighing the admissibility of evidence under Rule 404(b), the Court must consider four factors: (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect, and (4) the court must give a limiting instruction if the defendant so requests.  Huddleston v. United States, 485 U.S. 681, 691 (1988); United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006); United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).

### III.

### Rule 414

Plaintiff argues that evidence of defendant's prior conduct toward D.F., M.S., and T.S. should be admitted at trial under Rule 414.  Dkt. # 18, at 1.

Rule 414 applies to acts of child molestation.  Subsection (d)(2) of that Rule defines "child molestation" as

a crime under federal law or under state law . . . involving:

(A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

(B) any conduct prohibited by 18 U.S.C. chapter 110;

(C) contact between any part of defendant's body–or an object–and a child's genitals or anus;

(D) contact between the defendant's genitals or anus and any part of a child's body;

(E) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

(F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)–(E).

Fed. R. Evid. 414(d)(2). The statute under which defendant is charged, 18 U.S.C. § 2422(b), is found in 18 U.S.C. chapter 117, a chapter that is not listed in the definition of "child molestation" in Rule 414(d)(2). Rule 414(d)(2) lists only 18 U.S.C. chapters 109A and 110. However, the Tenth Circuit, in a published opinion, has applied Rule 414 to an 18 U.S.C. chapter 117 offense. In United States v. Meacham, 115 F.3d 1488 (10th Cir. 1997), the defendant was charged with transportation with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423, which is also located in 18 U.S.C. chapter 117. Id. at 1490. The minor in that case testified about two occurrences, one when she was seven or eight and one when she was ten. Id. at 1491. Only the latter incident was the subject of the defendant's alleged offense. Id. The defendant denied ever having sexual contact with the minor. Id. In rebuttal, the government called the defendant's two stepdaughters, who testified that the defendant had sexually abused them over thirty years prior. Id. The district court applied either Rule 404(b) or Rule 414 in deciding to admit the testimony of the stepdaughters.[4] Id. On appeal, the Tenth Circuit found no reversible error in the district court

---

[4] The Tenth Circuit noted that "there is some confusion whether the court admitted [the evidence] under Fed. R. Evid. 404(b) or 414, and, indeed, concerning which rule should apply." Meacham, 115 F.3d at 1491.

applying either Rule 404(b) or Rule 414.[5]  Id.  Similarly, the current case involves an offense charged

under 18 U.S.C. chapter 117.  Therefore, following Tenth Circuit precedent, the Court will apply the

Rule 414 analysis to the evidence concerning D.F., M.S., and T.S. only, because plaintiff has not

asked the Court to apply Rule 414 to the evidence concerning I.U.F. and C.C.

## D.F.

D.F. alleged in her forensic interview two uncharged incidents of molestation by defendant

that occurred when she was nine-years-old and staying at Rocio's house, where defendant resided

at the time.  Dkt. # 18, at 3.  In both instances, D.F. stated that defendant touched her breast area and

genitals under her clothes, and then forced her to touch his penis.  Id. at 3-4.  Defendant allegedly

gave D.F. ten dollars after the first incident and told her that if she told her mother what had

happened, she would get into trouble and her mother would hit her.  Id. at 4.  Plaintiff asks the Court

to allow it to introduce the prior acts under Rule 414.  Id. at 1.  At the evidentiary hearing, plaintiff

informed the Court that D.F., Dunia, and I.U.F. will testify as to the evidence of defendant's prior

acts toward D.F.

The prior alleged uncharged acts toward D.F. meet all three threshold Benally factors.  The

first Benally factor–"the defendant is accused of a crime involving sexual assault or child

molestation"–is met because the Tenth Circuit has applied Rule 414 to an 18 U.S.C. chapter 117

offense, and defendant is charged with such an offense, specifically, 18 U.S.C. § 2422(b).  The

---

[5]     Both the Seventh Circuit and the Sixth Circuit have applied Rule 414 to an offense under 18
U.S.C. chapter 117.  See United States v. McGuire, 627 F.3d 622 (7th Cir. 2010); United
States v. Lawrence, 187 F.3d 638 (6th Cir. 1999).  In addition, the Tenth Circuit has applied
Rule 413 to 18 U.S.C. chapter 117.  See United States v. Batton, 602 F.3d 1191 (10th Cir.
2010).  Finally, the Tenth Circuit has noted that Rule 414 can be applied to 18 U.S.C. chapter
109B, which is not listed under the definition of child molestation in Rule 414(d)(2).  See
United States v. Nance, 767 F.3d 1037 (10th Cir. 2014).

second Benally factor is that "the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation[.]" Benally, 500 F.3d at 1090. The alleged prior conduct toward D.F. constitutes sexual abuse under 18 U.S.C. chapter 109A. See 18 U.S.C. § 2243 (defining sexual abuse of a minor). Chapter 109A is listed in the definition of child molestation in Rule 414. See Fed. R. Evid. 414(d)(2)(A). Therefore, the evidence of defendant's prior conduct toward D.F. is "evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation[.]" Benally, 500 F.3d at 1090. The third Benally factor is that "the evidence is relevant." Benally, 500 F.3d at 1090. Evidence of defendant's prior alleged sexual abuse of D.F. is highly relevant to his charge of attempting to entice her to engage in sexual activity because it makes it more likely than not that the act occurred: if he sexually abused or molested D.F. in 2017, he is more likely to have attempted to entice her to engage in the same conduct in 2019.

Next, the Court applies the Benally/Enjady test to determine the probative value of the evidence.

First Enjady Factor

"The first Enjady factor is 'how clearly the prior act has been proved.'" Mercer, 653 Fed. App'x. at 626 (quoting Enjady, 134 F.3d at 1433)). "Under this factor, the district court must find 'that a jury could reasonably find that the "other act" occurred by a preponderance of the evidence.'" Id. The Court finds that the prior acts have been proved by a preponderance of the evidence. The Court has viewed the video interview of D.F., and finds her to be a credible witness. D.F. alleges in detail defendant's prior acts. It is unlikely that an eleven-year-old could recall with detail that defendant forced her to touch his penis, and touched her breast area and genitals under her clothes.

Dkt. # 18, at 3-4. D.F. remembered that she was lying down when this happened. Plaintiff exhibit 1, at REGALADO0070. In the first incident, D.F. remembered that she was watching the movie "Moana." Id. She further remembered that defendant "told her it was good, and he wanted to do it again." Id. Based on the Court's findings, a jury could reasonably find by a preponderance of the evidence that defendant committed these prior acts against D.F.

Second Enjady Factor

"The second Enjady factor is 'how probative the evidence is of the material fact it is admitted to prove.'" Mercer, 653 Fed. App'x. at 627 (quoting Enjady, 134 F.3d at 1433). "In assessing this factor, courts consider five additional subfactors: '(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony.'" Id. (quoting Benally, 500 F.3d at 1090-91).

After he was read his Miranda rights, defendant stated that he believed he was communicating over Facebook with Dunia, D.F.'s mother, rather than D.F. Dkt. # 18, at 3. The probative value of the evidence of defendant's prior conduct toward D.F. is that defendant sexually molested D.F. two years prior, making it more likely that he would contact D.F., rather than Dunia, for sexual activity. Therefore, the evidence is probative as to lack of mistake. See Mercer, 653 Fed. App'x. at 627 ("Most importantly, the district court found that the evidence was probative of Mercer's lack of mistake . . . ."). The evidence is probative of the fact of enticement because it involves the same minor and the same conduct.[6]

---

[6]     Defendant argues that in this case, unlike other Rule 414 cases, the credibility of the minor is not at stake. Dkt. # 21, at 7-8. However, no language in Rule 414 suggests that it is applicable only in cases where the child's credibility is at issue.

As to the subfactors, the prior, uncharged acts are similar to the charged acts. The conduct involves the same minor, and the same sexual misconduct. In 2017 (the date of the uncharged acts), defendant allegedly gave D.F. ten dollars after touching her breast area and genitals under her clothes, and forcing her to touch his penis; afterwards, he told her not to tell her mother or she would hit D.F. Dkt. # 18, at 3-4. This happened while D.F. was staying at Rocio's house, where defendant resided. Id. at 3. In 2019, the year defendant was charged with attempting to entice D.F. to engage in sexual activity, defendant contacted D.F. over Facebook, once through text message and another time through video. Id. at 2-3. In the conversations, defendant discussed previous touching, sent nude photographs of himself, and offered $200 for sexual intercourse. Id. at 3. During the video conversation with D.F. (not with her mother), defendant mentioned prior sexual contact with D.F., and offered her money in exchange for sexual intercourse. Id. Moreover, he made D.F. swear not to tell anyone of the conversation so that he would not go to jail. Id. The similarities between threatening D.F. not to tell anyone, offering money in exchange for sexual activity, and actual sexual contact make the prior, uncharged acts sufficiently similar to the charged acts. There is a two year lapse between the uncharged acts and the charged acts. However, the similarity of the acts outweighs any time difference. See Mercer, 653 Fed. App'x. At 628 ("[S]imilarity of prior acts may overcome staleness concerns."); Benally, 500 F.3d at 1088, 1092 (rejecting defendant's staleness argument even though two of the alleged prior acts occurred approximately forty years prior to trial); see also Meacham, 115 F.3d at 1492 ("The historical notes to the rules and congressional history indicate there is no time limit beyond which prior sex offenses by a defendant are inadmissible."); 140 Cong. Rec. S12990-01 ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and

properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses."). As to frequency of the prior acts, plaintiff alleges that D.F. was abused two times prior to the charged offense. Dkt. # 18, at 3. These uncharged acts are not particularly frequent in occurrence; however, defendant allegedly discussed this prior sexual contact with D.F. during his Facebook text messages and video call related to this enticement charge. See id. There is no evidence of intervening events occurring between the prior, uncharged acts and the charged acts. As discussed, though, the lapse in time and intervening events do not outweigh the similarity of the acts. While plaintiff can introduce evidence of Dunia's (pretending to be D.F.) conversation with defendant and the TPD's (also pretending to be D.F.) conversation with defendant, there is sufficient need for evidence of defendant's prior conduct toward D.F. The prior conduct makes it more likely that defendant thought he was contacting D.F., and not her mother, thus showing absence of mistake. The Court finds that all five subfactors show that evidence of defendant's prior conduct toward D.F. is sufficiently probative.

Third Enjady Factor

"The third Enjady factor is 'how seriously disputed the material fact is.'" Mercer, 653 Fed. App'x. at 628 (quoting Enjady, 134 F.3d at 1433). As discussed, defendant's presumed defense will be that he believed he was communicating with D.F.'s mother rather than D.F., based on his comments to the TPD officers. See Dkt. # 18, at 3. Therefore, the material fact that defendant allegedly attempted to entice D.F. to engage in sexual activity is seriously disputed. As such, this factor supports admitting the prior acts.

Fourth Enjady Factor

"The fourth Enjady factor is 'whether the government can avail itself of any less prejudicial evidence.'" Mercer, 653 Fed. App'x. at 628 (quoting Enjady, 134 F.3d at 1433). Defendant spends much time in his brief arguing that plaintiff can present less prejudicial evidence. See Dkt. # 21, at 7-9. Primarily, defendant argues that plaintiff will present Dunia's testimony and testimony of the TPD officers. Id. at 7. However, evidence of defendant's prior, uncharged acts toward D.F. is still relevant to plaintiff's case-in-chief in that it makes it less likely that defendant made a mistake in contacting D.F., rather than her mother. Therefore, the Court finds that plaintiff cannot solely avail itself of any less prejudicial evidence.

Danger of Unfair Prejudice Factors

"District courts weigh the above factors against '1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.'" Mercer, 653 Fed. App'x. at 629 (quoting Enjady, 134 F.3d at 1433).

The Court first finds that evidence of defendant's prior conduct toward D.F. will not likely contribute to an improperly-based jury verdict because the Court will give proper limiting instructions. See Mercer, 653 Fed. App'x. at 629 (affirming a district court's holding that prior acts were not overly prejudicial when it stated that it would give a limiting instruction). Because jurors are presumed to follow district courts' instructions, the Court finds that the evidence of defendant's prior conduct toward D.F. is unlikely to contribute to an improperly-based jury verdict. See United States v. McHorse, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive."). The Court next finds that evidence of

defendant's prior conduct toward D.F. will not distract the jury from the central issues of the trial; rather, it will focus the jury on defendant's lack of mistake in contacting D.F. rather than her mother. Finally, the evidence will not be exceedingly time consuming. Defendant argues that if the Court allows defendant's prior, uncharged conduct toward D.F., it will be exceedingly time consuming. Dkt. # 21, at 12. However, allegations of only two prior sexual molestations will not be exceedingly time consuming, even if defendant challenges both instances. Rather, the evidence will focus the jury on the material facts in dispute.

The Court has applied all <u>Enjady</u> factors, including the five subfactors, and weighed the probative value of the evidence of defendant's prior, uncharged conduct toward D.F. against its prejudicial dangers. The Court finds that the evidence has more probative value than prejudicial dangers.

<u>Rule 403 Balancing Test</u>

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court has discussed the prior uncharged conduct toward D.F. and its probative value: it demonstrates absence of mistake, and involves the same conduct and minor. The evidence is prejudicial, but it is not unfairly so. The evidence will not confuse the issues, because the evidence is central to defendant's defense, which appears to be "mistake." Further, the evidence will not mislead the jury because the Court will provide limiting instructions that the jury consider the evidence only for matters to which it is relevant. The evidence will not cause undue delay, because

it is central to the issue to be tried.  For the same reason, the evidence will not waste time.  Finally, the evidence is not cumulative, because it involves separate instances of defendant's conduct toward D.F.  The Court finds that evidence of defendant's prior, uncharged conduct toward D.F. is admissible under Rule 414, and its probative value is not substantially outweighed by the danger of unfair prejudice.

### M.S. and T.S.

The Court turns to the Rule 414 analysis as to defendant's prior alleged, uncharged conduct toward M.S. and T.S.  M.S. and T.S. were also staying at Rocio's house at the time of their alleged abuse.  Dkt. # 18, at 4.  During a forensic interview, seven-year-old M.S. informed the Child Advocacy Center that while staying at Rocio's house (where defendant lived) two years prior to the interview, defendant would frequently touch her face while watching television in the house.  Id. Defendant also allegedly touched M.S.'s genitals and buttocks over the clothes.  Id. M.S. stated that she saw defendant touch her sister, T.S., in the same places and take her into the bathroom with him. Id.  Five-year-old T.S. was also forensically interviewed, but was unresponsive to questioning.  Id. Yolanda S., the mother of M.S. and T.S., stated in an interview with the TPD that she walked in on defendant sitting next to T.S. with his hand next to her in an obscured location; when she arrived, defendant pulled his hand away.  Id.  Yolanda at another time walked to the first floor of Rocio's house and saw defendant with both T.S. and M.S., with his belt unbuckled, pulling up his pants.  Id. at 4-5.  When asked what he was doing, defendant informed Yolanda that he had been sleeping.  Id. at 5.  Plaintiff asks the Court to allow it to introduce the prior acts under Rule 414.  Id. at 1.  At the evidentiary hearing, plaintiff informed the Court that Dunia, M.S., I.U.F., and Yolanda will testify

as to the evidence of defendant's prior acts toward M.S., and Dunia, I.U.F., and M.S. will testify as to the evidence of defendant's prior acts toward T.S.

The prior alleged uncharged acts toward M.S. and T.S. meet all three threshold <u>Benally</u> factors. The first <u>Benally</u> factor–"the defendant is accused of a crime involving sexual assault or child molestation"–is met because the Tenth Circuit has applied Rule 414 to an 18 U.S.C. chapter 117 offense, and defendant is charged with such an offense, specifically, 18 U.S.C. § 2422(b). The second <u>Benally</u> factor is that "the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation[.]" <u>Benally</u>, 500 F.3d at 1090. Touching M.S.'s and T.S.'s genitals and buttocks over the clothes constitutes sexual abuse under 18 U.S.C. chapter 109A. <u>See</u> 18 U.S.C. § 2243 (defining sexual abuse of a minor). Chapter 109A is listed in the definition of child molestation in Rule 414. <u>See</u> Fed. R. Evid. 414(d)(2)(A). Therefore, the evidence of defendant's prior conduct toward M.S. and T.S. is "evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation[.]" <u>Benally</u>, 500 F.3d at 1090. The third <u>Benally</u> factor is that "the evidence is relevant." <u>Benally</u>, 500 F.3d at 1090. Evidence of defendant's prior alleged sexual abuse of M.S. and T.S. is highly relevant to his charge of attempting to entice D.F. to engage in sexual activity because if he sexually abused or molested minors other than D.F., he is less likely to have made a mistake in contacting D.F. rather than Dunia. Further, the evidence is relevant to show that defendant allegedly groomed and touched other minors while on the couch watching television, the same conduct that D.F. alleged in her forensic interview.

Next, the Court applies the <u>Benally</u>/<u>Enjady</u> test to determine the probative value of the evidence.

First Enjady Factor

"The first Enjady factor is 'how clearly the prior act has been proved.'" Mercer, 653 Fed. App'x. at 626 (quoting Enjady, 134 F.3d at 1433)). "Under this factor, the district court must find 'that a jury could reasonably find that the "other act" occurred by a preponderance of the evidence.'" Id. The Court finds that the prior acts have been proved by a preponderance of the evidence. The Court has watched the video interview of M.S., and finds her to be a credible witness. The Court acknowledges that, at one point in the interview, M.S. stated that she was told that events happened; she did not necessarily remember the events. See, e.g., plaintiff exhibit 5(a), at REGALADO0293. However, at other points in the interview, M.S. is clearly recalling events from her personal knowledge of them. See id. at REGALADO0302. For example, in one occurrence during the interview, M.S. was asked whether she was in the living room or bedroom when defendant interacted with her; she stated that she was in the bedroom. Id. She further stated that her sister, T.S., asked if she could go into the bathroom with defendant and M.S. said no. Id. There is no evidence that M.S.'s mother knew about either of these interactions. In another instance of the interview, M.S. stated that no one had told her what to say, and that defendant told her not to tell anyone else what happened to her or else he would hit her. Id. at REGALADO0305. In addition, Yolanda, M.S.'s and T.S.'s mother, will be called as a witness. She will likely testify that she walked in on defendant sitting next to T.S. with his hand next to her in an obscured location; when Yolanda arrived, defendant pulled his hand away. Dkt. # 18, at 4. Yolanda will also likely testify that at another time, she walked to the first floor of her house and saw defendant with both T.S. and M.S., with his belt unbuckled, pulling up his pants. Id. at 4-5. She will likely state that when asked what he was doing, defendant informed Yolanda that he had been sleeping. Id. at 5. The Court finds, based on the

interview with M.S. and this other evidence, that a jury could reasonably find that the other acts of defendant toward M.S. and T.S. occurred by a preponderance of the evidence.

Second Enjady Factor

"The second Enjady factor is 'how probative the evidence is of the material fact it is admitted to prove.'" Mercer, 653 Fed. App'x. at 627 (quoting Enjady, 134 F.3d at 1433). "In assessing this factor, courts consider five additional subfactors: '(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony.'" Id. (quoting Benally, 500 F.3d at 1090-91).

The evidence is first probative of a material fact in dispute, "mistake." This is so because M.S. alleged that defendant touched her and T.S. while they were on the couch watching television. If this is true, defendant is more likely to have groomed and touched D.F. while she was on the couch watching television in 2017 (which she alleges in her forensic interview), and that makes it more probable that defendant would have attempted to entice D.F. to engage in the same conduct in 2019. Further, if defendant molested other minors (M.S. and T.S.), he is more likely to have attempted to entice D.F. to engage in the same conduct.

As to the subfactors, the prior, uncharged acts toward M.S. and T.S. are similar to the charged acts. During defendant's text message conversation with D.F., he stated that he had previously touched her. Dkt. # 18, at 3. D.F. also alleged that defendant had touched her breast area and genitals under her clothes, and then forced her to touch his penis while watching a movie on the couch. Id. at 3-4. Defendant allegedly touched M.S. and T.S. while they were on the couch watching television. Id. at 4. Further, Yolanda, M.S.'s and T.S.'s mother, observed defendant

watching television next to T.S. with his hand in an obscured location.  Id.  Defendant resided with

Rocio, with whom D.F., M.S., and T.S. stayed or visited.  Defendant, in the Facebook call, made

D.F. swear not to tell anyone about the conversation.  Id. at 3.  He also allegedly told M.S. not to tell

anyone about what he had done or he would hit her.  Id. at 4.  There is again a two year time lapse

between the charged conduct and the uncharged conduct.  Id.  However, the Tenth Circuit has held

that a forty year time lapse is insufficient to create a staleness issue.  Benally, 500 F.3d at 1088,

1092.  The prior acts do not appear to be particularly frequent.  However, M.S. stated in her forensic

interview that defendant "frequently" touched her face while watching television.  Dkt. # 18, at 4.

Further, Yolanda stated that she had observed two instances of defendant acting improperly toward

M.S. and T.S.  Id.  There is no evidence of intervening events.  Finally, there is a need for testimony

regarding defendant's alleged conduct toward M.S. and T.S.  As discussed, this evidence shows

absence of mistake, which appears to be defendant's defense.  Further, it shows other episodes of

grooming of minors by defendant.  The Court finds that evidence of M.S. and T.S. is sufficiently

probative.

Third Enjady Factor

"The third Enjady factor is 'how seriously disputed the material fact is.'"  Mercer, 653 Fed.

App'x. at 628 (quoting Enjady, 134 F.3d at 1433).  Defendant disputes that he attempted to entice

D.F. to engage in sexual activity.  His defense is that he thought he was communicating with Dunia

rather than D.F. Dkt. # 18, at 3.  Therefore, this factor favors admitting the evidence of defendant's

conduct toward M.S. and T.S.

Fourth Enjady Factor

"The fourth Enjady factor is 'whether the government can avail itself of any less prejudicial evidence.'" Mercer, 653 Fed. App'x. at 628 (quoting Enjady, 134 F.3d at 1433). Defendant argues that plaintiff will present Dunia's testimony and testimony of the TPD officers. Dkt. # 21 at 7. However, evidence of defendant's prior, uncharged acts toward M.S. and T.S. is still relevant to plaintiff's case-in-chief in that it makes it less likely that defendant made a mistake in contacting D.F., who is also a minor, rather than her mother.

Danger of Unfair Prejudice Factors

"District courts weigh the above factors against '1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.'" Mercer, 653 Fed. App'x. at 629 (quoting Enjady, 134 F.3d at 1433).

The Court first finds that evidence of defendant's prior conduct toward M.S. and T.S. will not likely contribute to an improperly-based jury verdict because the Court will give proper limiting instructions. See Mercer, 653 Fed. App'x. at 629 (affirming a district court's holding that prior acts were not overly prejudicial when it stated that it would give a limiting instruction). Because jurors are presumed to follow district courts' instructions, the Court finds that the evidence of defendant's prior conduct toward M.S. and T.S. is unlikely to contribute to an improperly-based jury verdict. See United States v. McHorse, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive."). The Court next finds that evidence of defendant's prior conduct toward M.S. and T.S. will not distract that jury from the central issues of the trial; rather, it will focus the jury on defendant's lack of mistake in contacting D.F. rather than

her mother. Finally, the evidence will not be exceedingly time consuming. Defendant argues that if the Court allows defendant's prior, uncharged conduct toward M.S. and T.S., it will be exceedingly time consuming because defendant will "be required as part of a zealous defense of [defendant] to raise all of these issues." Dkt. # 21, at 12. However, allegations of these prior acts of sexual misconduct as to M.S. and T.S. will not be exceedingly time consuming, even if defendant challenges all instances. Rather, the evidence will focus the jury on the material facts in dispute.

The Court has applied all <u>Enjady</u> factors, including the five subfactors, and weighed the probative value of the evidence of defendant's prior, uncharged conduct toward M.S. and T.S. against its prejudicial dangers. The Court finds that the evidence has more probative value than prejudicial dangers.

<u>Rule 403 Balancing Test</u>

The Court has discussed the prior uncharged conduct toward M.S. and T.S. and its probative value: it demonstrates absence of mistake, and involves prior instances of grooming two minors. The evidence is prejudicial, but it is not unfairly so. The evidence will not confuse the issues because the evidence is central to defendant's defense, which appears to be "mistake." Further, the evidence will not mislead the jury because the Court will provide limiting instructions that the jury consider the evidence only for matters to which it is relevant. The evidence will not cause undue delay, because it is central to the issue to be tried. For the same reason, the evidence will not waste time. Finally, the evidence is not cumulative, because it involves separate instances of defendant's conduct toward M.S. and T.S. The Court finds that evidence of defendant's prior, uncharged conduct toward M.S. and T.S. is admissible under Rule 414, and its probative value is not substantially outweighed by the danger of unfair prejudice.

# IV.

## Rule 404(b)

As to all five minors, plaintiff argues that evidence of defendant's conduct toward them is relevant, and for a proper purpose under Rule 404(b). Dkt. # 18, at 21. With regard to the charged conduct, plaintiff alleges that defendant sent Dunia (who pretended to be D.F.) nude photographs of himself, requested sexually explicit photographs, discussed previous touching, and proposed sexual intercourse in exchange for $200. Id. at 3. Defendant also made a Facebook call to D.F., during which Dunia overheard defendant mention prior sexual contact with D.F., an offer to marry D.F. when she turned eighteen, an offer of money in exchange for sexual intercourse, and he made D.F. swear not to tell anyone so that he would not go to jail. Id.

Plaintiff first alleges that defendant's prior, uncharged acts toward D.F.[7] are intrinsic to the charged offense in count one of the indictment and, therefore, Rule 404(b) does not apply. Id. at 2. The Court finds that the conduct as to D.F. is intrinsic because it involves the same minor, the same or similar conduct, was part of the scheme with which defendant is charged, and is inextricably intertwined with the charged crime such that the witnesses' testimony would be confusing and incomplete without mention of the prior acts.

Defendant used Facebook to attempt to entice D.F. to engage in sexual activity on April 28 and 29, 2019. Id. at 2-3. The prior, uncharged conduct against D.F. allegedly occurred in 2017, two years prior. Id. at 3. Defendant lived at Rocio's house, where D.F. had stayed in 2017. Id. at 3.

---

[7] Plaintiff also argues that defendant's alleged conduct toward M.S. and T.S. is intrinsic to his charged offense. However, the Court finds that defendant's conduct toward M.S. and T.S. is extrinsic to the offense because it occurred with other minors not involved in this alleged offense.

When defendant allegedly committed the charged offense, D.F. was no longer staying at Rocio's house. Id. Therefore, he contacted her other than in person (i.e., electronically) to entice her to engage in similar sexual activity that he allegedly committed in 2017. Although the prior, uncharged acts occurred two years prior to the alleged attempted enticement of D.F.,[8] the Court finds that they involve the same minor, the same or similar acts, discussion of the prior acts during commission of this alleged offense, were part of the same scheme, and are inextricably intertwined. Therefore, the Court finds that the alleged prior acts with D.F. are intrinsic to the crime charged and Rule 404(b) is inapplicable.

However, even if the prior conduct as to D.F. were not intrinsic to this offense, plaintiff would offer it under Rule 404(b). Plaintiff offers evidence of all five minors to show motive, intent, plan, and absence of mistake. Dkt. # 18, at 21. In weighing the admissibility of evidence under Rule 404(b), the Court must consider four factors: (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect, and (4) the court must give a limiting instruction if the defendant so requests. Huddleston v. United States, 485 U.S. 681, 691 (1988).

The Court first finds that evidence of defendant's prior conduct toward C.C. is not for a proper purpose, nor is it relevant. Plaintiff alleges that defendant "would often stare at C.C., and her father would always accompany her when she went to the basement of the house where Defendant lived." Dkt. # 18, at 5. This is not relevant conduct to the offense charged. There is no sexual misconduct, abuse, or molestation; there is only "weird" conduct. This is not relevant to defendant's

---

[8]    The Tenth Circuit has held that evidence can be intrinsic even if it occurred over a period of several years prior to the charged offense. See United States v. Collins, 97 Fed. App'x. 818, 823-24 (10th Cir. 2004).

charge of attempted enticement of a minor to engage in sexual activity. The only arguably relevant activity alleged as to C.C. is that defendant gave her five dollars. Id. However, there is no evidence that defendant gave C.C. the five dollars in exchange for sexual activity, like he allegedly did with D.F.

The Court next finds that the evidence of defendant's prior conduct toward D.F., M.S., T.S., and I.U.F. shows motive, intent, plan, and absence of mistake. The evidence as to these four minors first demonstrates motive and intent to engage in this conduct. If defendant touched D.F.'s breast area and genitals under her clothes, and then forced her to touch his penis while she was staying at Rocio's house (where defendant resided), he would have a motive to contact her again over Facebook to engage in the same sexual activity. If defendant touched M.S.'s and T.S.'s genitals and buttocks over the clothes, he would have a motive to entice D.F., also a minor, to engage in the same conduct. And if defendant offered to give I.U.F., another minor, a cellular telephone if she would go into the basement with him for a kiss, he is more likely to have offered D.F. money over Facebook in exchange for sexual intercourse. Second, the evidence demonstrates plan. Defendant lived at Rocio's house while the four minors were staying (either separately or at the same time) when he allegedly sexually abused them or attempted to engage in sexual activity. Dkt. # 18, at 3-5. If defendant sexually abuse other minors with whom he lived while they were staying at Rocio's house, he is much more likely to have attempted to entice D.F., with whom he also had lived while she was staying at Rocio's house, to engage in sexual activity. Finally, the evidence demonstrates absence of mistake. After being read his Miranda rights, defendant stated that he believed he was communicating with Dunia, and not D.F. Dkt. # 18, at 3. Thus, his defense appears to be "mistake." The evidence of defendant's alleged prior conduct toward the minors demonstrates that he seeks out

minors to engage in sexual activity. For these reasons, the evidence of defendant's prior, uncharged

conduct is for a proper purpose.[9]

As to relevance, Rule 401 defines relevant evidence as having "any tendency to make a fact

more or less probable than it would be without the evidence; and . . . the fact is of consequence in

determining the action." Fed. R. Evid. 401. Evidence of defendant grooming or touching D.F. and

other minors is relevant because it makes it more likely that he attempted to entice D.F. to engage

in the same conduct. Moreover, the evidence is relevant because it demonstrates absence of mistake.

The Court must next weigh the evidence's prejudicial danger. The Court finds that the

probative value of the evidence is not substantially outweighed by unfair prejudice. While the

evidence is prejudicial, it is not unfairly so. First, the evidence is necessary to show motive, intent,

plan, and absence of mistake. Plaintiff cannot avail itself solely of less prejudicial evidence. In

addition, the Court will instruct the jury to consider the evidence only for the proper purposes of

showing motive, intent, plan, and absence of mistake. See Nance, 767 F.3d at 1042 ("the probative

value of this evidence . . . [is] not substantially outweighed by its potential for unfair prejudice

because the Court [will], upon defen[dant's] request, instruct jurors to consider the evidence only

for the limited purposes for which it [is] admitted."); see also United States v. Reddeck, 22 F.3d

---

[9]     Defendant submitted a notice of additional authority (Dkt. # 26), asking the Court to consider
        an Air Force Court of Military Review case from 1990. See United States v. McDowell, 30
        M.J. 796 (A.F.C.M.R. 1990). However, in addition to being non precedential and based on
        a different legal standard, this case is factually distinguishable from the current case (other
        than as to C.C.). In McDowell, the father of the minor testified that he had become
        "apprehensive" of suspicious conduct toward his son. Id. at 797. The court found the
        evidence "vague and generally nonspecific," and thus reversed the trial court's ruling that the
        evidence was admissible. Id. at 797, 799. In the current case, evidence of defendant's
        conduct toward D.F., M.S., T.S., and I.U.F. is specific, and not vague or nonspecific.

1504, 1510 (10th Cir. 1994) (concluding introduction of evidence was not unfairly prejudicial where court gave limiting instruction).

As discussed, evidence of D.F., M.S., T.S., and I.U.F. is relevant for the purpose of proving motive, intent, plan, and absence of mistake. This relevance substantially outweighs the dangers of unfair prejudice. First, although the evidence is prejudicial, it is not unfairly so. It will also not confuse the issues, as "mistake" is a material issue if defendant opens the door to this defense. For the same reason, the evidence will not mislead the jury, and the Court will give a limiting instruction. The evidence will not waste time, because it is central to plaintiff's case-in-chief. Further, the evidence is not cumulative because it is different from the testimony related to the April 2019 attempt.

Accordingly, the Court finds that evidence of defendant's prior uncharged conduct is admissible under Rule 404(b) as to D.F., M.S., T.S., and I.U.F. to demonstrate motive, intent, plan, and absence of mistake, and its probative value is not substantially outweighed by the danger of unfair prejudice. However, the Court will not allow this Rule 404(b) evidence to be introduced unless defendant first opens the door by asserting the defense of mistake.

**V.**

Defendant has filed a second motion in limine (Dkt. # 25), seeking to exclude all conduct that allegedly occurred at "Rocio's house." Dkt. # 25, at 2. This is the conduct discussed above related to D.F., M.S., T.S., and I.U.F. Defendant first argues that the Court should exclude this conduct under Rule 403 because the evidence would overwhelm the trial, and "[m]ore witnesses would testify about events that alleged[ly] occurred at Rocio's house than would testify about the charged conduct." Id. at 5-6. However, as discussed in III and IV, supra, evidence of events occurring at

Rocio's house is central to plaintiff's case because it shows absence of mistake; therefore, the evidence is necessary and relevant. Defendant next argues that testimony of the five minors should be excluded because they "have been exposed to all of the rumors, suspicions, and anger of their parents." Id. at 6. However, other than in his first motion in limine (Dkt. # 24), defendant does not specifically allege that the witnesses' testimony is based on anything other than personal knowledge. Defendant next argues that the statements of the minors may constitute hearsay and create a Confrontation Clause issue. Id. at 7. However, plaintiff has informed the Court that all witnesses other than T.S. will testify. T.S. was unresponsive in her forensic interview. In addition, neither Yolanda nor M.S. will testify to events other than those to which they have personal knowledge. Defendant argues that the Court should reject the evidence because it involves improper vouching or bolstering of witnesses, and argues that "[t]here is a danger that the witnesses would be tempted to refer to statements or suspicions of other people during their testimony." Id. at 8-9. In addition to invocation of the rule of sequestration at trial, defendant can object to or move to strike any testimony as to which a witness does not have personal knowledge or which refers to the statements or suspicions of others. Defendant finally argues that the Court should order plaintiff not to refer to the minors as "victims" during trial. Id. The Court will require plaintiff and its witnesses to refer to the minors by their initials. For these reasons and all the reasons discussed in III and IV, supra, defendant's second motion in limine (Dkt. # 25) is denied in part as to all issues except reference to the minors as "victims;" it is granted in part as to reference to the minors as "victims."

IT IS THEREFORE ORDERED that plaintiff may introduce evidence of defendant's prior conduct as to D.F., M.S., and T.S. under Rule 414 on any matter to which it is relevant.

**IT IS FURTHER ORDERED** that plaintiff may introduce evidence of defendant's prior conduct as to D.F., M.S., T.S., and I.U.F. under Rule 404(b) for the purpose of demonstrating motive, intent, plan, and absence of mistake, but only if defendant opens the door by asserting the defense of mistake.

**IT IS FURTHER ORDERED** that plaintiff may not introduce evidence under Rule 404(b) of defendant's prior conduct toward C.C.

**IT IS FURTHER ORDERED** that defendant's second motion in limine (Dkt. # 25) is **denied in part** as to all issues except reference to the minors as "victims;" it is **granted in part** as to reference to the minors as "victims." Plaintiff and its witnesses shall refer to the minors by their initials.

**DATED** this 6th day of November, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE